# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DALLAS POLICE AND FIRE PENSION SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| COLUMBUS A. ALEXANDER, III, | § § § | |
| Defendant and Counter-Plaintiff, | § § | Civil Action No. 4:17-cv-631-ALM-KPJ |
| v. | § § § | |
| DALLAS POLICE AND FIRE PENSION SYSTEM, KELLY GOTTSCHALK, JOSHUA MOND, SUMMER LOVELAND, JULIE FORT, JULIE FORT ATTORNEY, PLLC, and MESSER,  ROCKEFELLER, FORT, PLLC, | § § § § § § § § § | |
| Counter-Defendants. | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the Report and Recommendation of the United States Magistrate Judge in this action (the "Report") (Dkt. #115), this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636.  The following four Motions are pending before the Court:

1. Plaintiff Dallas Police and Fire System (the "System") and Counter-Defendants Kelly Gottschalk, Joshua Mond, and Summer Loveland's (the "Individual System Defendants") Motion to Reconsider the State Court's Order (the "Motion to Reconsider") (Dkt. #34);

2. Counter-Defendants Julie Fort, Julie Fort Attorney, PLLC, and Messer, Rockefeller, Fort, PLLC's (the "Law Firm Defendants") Amended Rule 12(b)(6) Motion to Dismiss (the "Law Firm Defendants' Motion to Dismiss") (Dkt. #26);

3. The System's Second Amended Rule 12(c) Motion for Judgment on the Pleadings (the "MJOP") (Dkt. #54); and

4. The Individual System Defendants' Second Rule 12(b)(6) Motion to Dismiss and Anti-SLAPP Motion Pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code (the "Individual System Defendants' Motion to Dismiss and Anti-SLAPP Motion") (Dkt. #53).

In the Report, the Magistrate Judge recommended that System and Individual System Defendant's Motion to Reconsider (Dkt. #34) be denied, the Law Firm Defendants' Motion to Dismiss (Dkt. #26) be granted, the System's MJOP (Dkt. #54) be granted, and the Individual and System Defendants' Motion to Dismiss and Anti-SLAPP Motion (Dkt. #53) be granted in part and denied in part (Dkt. #115). Alexander, the System, and the Individual System Defendants then filed Objections (Dkts. #116, 119), to which numerous responses, replies, sur-replies, and sur-sur-replies were filed (Dkts. #116, #119, #120, #121, #122, #124, #125, #126, #135, #136, #137, #139).

The Court has conducted a *de novo* review of the Objections and is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the Objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I.   BACKGROUND

### A. FACTUAL BACKGROUND

The System is a governmental pension fund that provides benefits to over ten-thousand retired police officers and firefighters (Dkt. #20 at p. 3). The Individual System Defendants are all employed by the System: Kelly Gottschalk serves as the System's executive director, Joshua Mond serves as the System's general counsel, and Summer Loveland serves as an executive for the System, although her precise title is unclear (Dkt. #20 at 16–17, 23). The Law Firm Defendants are outside counsel the System retained (Dkt. #20 at 23–24).

Alexander is a certified public accountant ("CPA") and certified fraud examiner, whose business operates under the name "CA Forensics, LLC" (Dkt. #20 at 23–24). Alexander also operates the website www.dpfps.com, where he posts information related to alleged public corruption at the Dallas Police and Fire Pension (Dkt. #20 at 19–20).

In early 2002, the System's fiduciaries hired Alexander to investigate the System's finances (Dkt. #20 at 7). Alexander alleges that his investigation revealed evidence of theft, fraud, and poor treatment of employees (Dkt. #20 at 2, 8). According to Alexander, the System, its board of trustees, and its operations are "corrupt" (Dkt. #20 at 2).

After Alexander produced a report with preliminary findings of misconduct, the System allegedly took retaliatory action, such as breaking the lock on Alexander's file trunk and surveilling Alexander at his home (Dkt. #20 11–12).

On June 25, 2002, the System sued Alexander in the 44th Judicial District Court of Dallas County, Texas. *Dallas Fire & Fire Pension Sys. v. Alexander*, No. 02-04814, Orig. Pet. (44th Dist. Ct., Dallas Cnty. June 25, 2002). On August 7, 2002, the System and Alexander entered into a Settlement Agreement, which contained the following no-contact provision:

> The Pension System, its trustees, and employees agree not to call upon or contact Mr. Alexander, or use his services and knowledge, in any way in the future, and likewise Mr. Alexander will not call upon or contact the Pension System, its Trustees or employees.

(Dkt. #20, Exhibit 5 at p. 2).

Thereafter, from October 27, 2002 to September 15, 2004, Alexander allegedly submitted more than one hundred public records requests to the System under the Texas Public Information Act ("TPIA," or the "Act") and the Act's predecessor, the Texas Open Records Act (Dkt. #20 at p. 13). The System fulfilled most of these requests by sending Alexander written replies (Dkt. #20 at p. 13). Alexander posted the information he obtained on his website, and local news outlets reported Alexander's findings (Dkt. #20 at 3, 19, 20).

On February 24, 2015, a retired Dallas police officer contacted Alexander and renewed Alexander's interest in the System and its operations (Dkt. #20 at p. 14).  On April 6, 2016, Alexander began filing a new set of TPIA requests, which sought information regarding the System's payments to newly hired attorneys and law firms (Dkt. #20 at 6, 22–23).  Initially, the System responded to Alexander's requests (Dkt. #20 at 23).  However, on May 20, 2016, the System, through Law Firm Defendant Julie Fort, notified Alexander that his TPIA requests violated the no-contact provision of their Settlement Agreement (Dkt. #20 at 23–24).  After receiving this notice, Alexander withdrew his outstanding TPIA requests (Dkt. #20 at 25).  The System then received almost identical TPIA requests from Julie Kobel ("Kobel"), Alexander's wife (Dkt. #20 at p. 25; Dkt. #53 at p. 4).  Kobel was not a party to the Settlement Agreement (Dkt. #20 at p. 25).  Subsequently, the System notified Alexander that his wife's requests breached the Settlement Agreement (Dkt. #20 at p. 25).  The System stated that having Kobel act as Alexander's agent or alias breached the Agreement's no-contact provision (Dkt. #20 at p. 25).

## B.  PROCEEDINGS IN STATE COURT

On June 23, 2016, the System initiated this lawsuit in the 416th Judicial District Court of Collin County, Texas.  *Dallas Police & Fire Pension Sys. v. Alexander*, No. 416-02718-2016, Orig. Pet. (416th Dist. Ct., Collin Cnty. June 23, 2016).  In this lawsuit, the System asserted a breach of contract claim, alleging Alexander's TPIA requests violated the Settlement Agreement (Dkt. #20, Exhibit 21).  Alexander then filed an Original Answer and Counterclaim (Dkt. #1, Exhibit 5).  Alexander's Counterclaim alleges the System's interpretation of the Settlement Agreement violates the First Amendment's Free Speech Clause (Dkt. #1, Exhibit 5 at 21–22).

On July 1, 2016, the System submitted a letter to the Texas Attorney General (Dkt. #20, Exhibit 20).  In the letter, the System requested that the Attorney General determine whether some or all the records Alexander and Kobel requested are exempt from disclosure under the TPIA

(Dkt. #20, Exhibit 20).   In response, the Attorney General advised that the System need not

produce attorney-client communications; however, the System must disclose the bulk of the

information requested, notwithstanding the Settlement Agreement's no-contact provision.  *See* Op.

Tex. Att'y Gen. No. OR2016-20208 (Sept. 7, 2016) (the "Advisory Opinion").   The Attorney

General explained:

> The system states the terms of the settlement agreement stipulate that a named party
> to the settlement agreement "will not call upon or contact the [system,] its [t]rustees
> or employees."  Section 552.101 excepts from disclosure "information considered
> to be confidential by law, either constitutional, statutory, or by judicial decision."
> Gov't Code § 552.101.   However, the system has not pointed to any statutory
> confidentiality provision, nor are we aware of any, that would make any of the
> information at issue confidential for purposes of section 552.101.  *See, e.g.*, Open
> Records Decision No. 611 at 1 (1992) (common-law privacy), 600 at 4 (1992)
> (constitutional privacy), 478 at 2 (statutory confidentiality).  Therefore, the system
> may not withhold the information at issue under section 552.101 of the Government
> Code. . . . Consequently, unless the submitted information comes within an
> exception to disclosure, it must be released, notwithstanding any expectation or
> agreement to the contrary.

*Id.* at *2 (brackets, italics, and quotes in original).

Alexander subsequently filed a Second, Third, and Fourth Amended Answer and

Counterclaim (Dkt. #1, Exhibits 7; 12, 13).  Although these responsive pleadings added factual

allegations and prayers for relief, they maintained one Counterclaim—that the System, Individual

System Defendants, and Law Firm Defendants violated the First Amendment's Free Speech

Clause (Dkt. #1, Exhibits 7; 12, 13).  On April 6, 2017, the state court granted summary judgment

on the System's breach of contract claim in favor of Alexander (Dkt. #34, Exhibits 1, 3).  The state

court found, "[a]s a matter of law, Alexander has a fundamental right to request information from

governmental entities in the State of Texas, and that right cannot be annulled by agreement. . . . In

other words, a governmental body cannot, through an agreement of contract, overrule or repeal

provisions of the Act." (Dkt. #34, Exhibit 1 at pp. 4–5).

## C.  PROCEEDINGS IN FEDERAL COURT

On September 7, 2017, the Individual System Defendants and Law Firm Defendants removed the lawsuit to this Court (Dkt. #1).  After Alexander filed a Fifth Amended Answer and Counterclaim—which, again, only contained one Counterclaim—the parties filed the four Motions pending before the Court (*See* Dkts. #20, #26, #34, #53, #54).  In summary, the pending Motions seek the following: (1) the System and Individual System Defendants' Motion for Reconsideration ask that this Court reconsider the state court's grant of summary judgment on their breach of contract claim; (2) the Law Firm Defendants' Motion to Dismiss seeks dismissal of Alexander's First Amendment Counterclaim for failure to state a claim; (3) the System's MJOP seeks judgment on the pleadings with respect to Alexander's First Amendment Counterclaim; and (4) the Individual System Defendants' Motion to Dismiss and Anti-SLAPP Motion seeks dismissal of Alexander's First Amendment Counterclaim for failure to state a claim, dismissal under the doctrine of qualified immunity, or dismissal under Section 27 of the Texas Citizens Participation Act ("TCPA") (Dkts. #26, #34, #53, #54).[1]

The Magistrate Judge entered the Report, which recommended the following findings of facts and conclusions of law: (1) the System and Individual System Defendants did not meet their burden to justify reconsideration of the state judge's ruling; (2) the System could not waive Alexander's TPIA rights through a contractual agreement; (3) the state court properly granted summary judgment on the System's breach of contract claim; (4) Alexander had not plausibly pled a First Amendment retaliation claim; (5) Alexander should not be granted leave to replead his First Amendment retaliation claim; and (6) pursuant to the Fifth Circuit's decision in *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), the TCPA does not apply in federal court (Dkt. #115).  Accordingly, the Magistrate Judge recommended that System and Individual System Defendants' Motion to

---

[1] SLAPP is an acronym for Strategic Litigation Against Public Participation.  *See Klocke*, 936 at 242 n.1.

Reconsider (Dkt. #34) be denied, the Law Firm Defendants' Motion to Dismiss (Dkt. #26) be granted, the System's MJOP (Dkt. #54) be granted, and the Individual System Defendant's Motion to Dismiss and Anti-SLAPP Motion (Dkt. #53) be granted in part and denied in part (Dkt. #115). Alexander, the System, and the Individual System Defendants filed Objections to the Report (Dkts. #116, 119), to which the parties filed numerous responses, replies, sur-replies, and sur-sur-replies (Dkts. #120, #121, #122, #124, #125, #126, #133, #135, #136, #137, #139).

## II.   LEGAL STANDARD

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2)–(3).

Objections to a report must specifically identify portions of the report and the basis for those objections.  FED. R. CIV. P. 72(b); *see also Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  Moreover, the District Court need not consider frivolous, conclusory, or general objections.  *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds*, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

## III.   ANALYSIS

### A.   ALEXANDER'S OBJECTION

Alexander's Objection concedes that the TPIA confers a statutory right, not a constitutional right (Dkt. #116 at p. 6).  However, Alexander argues the Magistrate Judge's Report did not address the correct question before the Court (Dkt. #116 at p. 1).  According to Alexander, the question before the Court was whether Alexander has plausibly pleaded that this lawsuit was intended to "punish past communications and prohibit future communications from both Alexander and his wife" in violation of the First Amendment (Dkt. #116 at p. 1).  Alexander argues the Magistrate Judge erroneously answered a narrower question: whether he has plausibly pleaded

that this lawsuit was meant to chill Alexander's ability to submit TPIA requests (Dkt. #116 at p.

1). According to Alexander, had the Magistrate addressed the broader question, dismissal under

Rule 12(b)(6) and judgment on the pleadings under Rule 12(c) would not have been warranted

(Dkt. #116 at p. 1).

### 1.  First Amendment Retaliation

To succeed on a First Amendment retaliation claim, the plaintiff must show: (1) he was

engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an

injury that would chill a person of ordinary firmness from continuing to engage in that activity;

and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise

of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

As the Magistrate Judge properly concluded—and the parties do not dispute this finding—

the TPIA confers a statutory right, not a constitutional right (Dkt. #116 at p. 6; Dkt. #120 at p. 4;

Dkt. #121 at p. 3). Because submitting TPIA requests is not a constitutionally protected act, a First

Amendment retaliation claim based on such conduct does not plausibly plead a claim upon which

relief can be granted (*See* Dkt. #115 at pp. 19–20 (compiling cases)). Therefore, the remaining

issue is whether Alexander plausibly pleaded a First Amendment retaliation claim with respect to

his more general conduct: the dissemination of information as an expression of his core political

speech.

The Fifth Circuit has held a First Amendment retaliation claim cannot be raised in response

to a lawsuit. *See Johnson v. Louisiana Dep't of Agric.*, 18 F.3d 318, 320–21 (5th Cir. 1994). In

*Johnson*, a crop duster claimed the defendants had initiated administrative actions against him for

alleged violation of state pesticide laws in retaliation to the crop duster's First Amendment free

speech rights: "[The crop duster] alleges that defendants targeted him for prosecution because he

'would not shut up and acquiesce to the mistreatment inflicted upon him by the [defendants]." *Id.*

at 319–20.  The district court dismissed the crop duster's First Amendment retaliation claim for

failure to state a claim, and the Fifth Circuit affirmed.  *Id.*  In so doing, the Fifth Circuit held:

> If this allegation asserts a claim on any basis, we agree with the district court that
> the claim is one for malicious prosecution in violation of [the crop duster's] First
> Amendment rights.  Whether the Constitution comprehends any such claim is far
> from clear. . . . Further, it is an even more complex question whether and on what
> basis a First Amendment claim of malicious prosecution can be made.  But at the
> very least, if the First Amendment protects against malicious prosecution, [the crop
> duster] must not only allege a deprivation of a constitutional right, but must also
> establish all the elements of the common law tort action.

*Id.* at 320; *see also Hinds v. Dallas Indep. Sch. Dist.*, 188 F. Supp. 2d 664, 674 (N.D. Tex. Feb.

22, 2002) ("The Court finds no authority, and [the defendant] cites none, which holds or intimates

that the parameters of the right to be free from retaliation by government officials for expressing

one's First Amendment rights even marginally include the right to be free from a counterclaim or

lawsuit."); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 242–44 (Tex. App.—Dallas 2000,

pet. denied) (concluding "there is no clearly established right to claim a First Amendment violation

from the filing of a civil lawsuit . . . in retaliation for the exercise of free speech rights.").

To the extent Alexander believes the lawsuit is frivolous because it lacks a basis in law or

fact, sanctions is the appropriate remedy, not asserting a First Amendment retaliation claim.  *See*

*Hinds*, 188 F. Supp. 2d at 674.

## 2.  Repleading

Because Alexander cannot assert a First Amendment retaliation claim based on a

governmental entity's filing of a lawsuit, the next inquiry is whether Alexander should be

permitted to replead a counterclaim of malicious prosecution.  The Court concludes that leave to

amend should not be extended.

On a motion to dismiss for failure to state a claim and a motion for judgment on the

pleadings, a plaintiff's failure to meet specific pleading requirements should not automatically or

inflexibly result in dismissal of the complaint with prejudice to refiling.  *See Owens v. TransUnion,*

*LLC*, No. 4:20-cv-665, Dkt. #66 at pp. 21–22 (E.D. Tex. Aug. 6, 2021) (citations omitted).  There are five considerations to determine whether to grant a party leave to amend: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citations omitted).

First, although Alexander has not objected to the Magistrate Judge's recommendation that granting leave to amend should be denied, even if Alexander had, Alexander would have unduly delayed in seeking leave to amend.  The System first sued Alexander in state court on June 23, 2016 (Dkt. #20, Exhibit 21).  The Magistrate Judge's Report was entered on March 26, 2020, and Alexander filed his Objections on April 2, 2020 (Dkts. #115, 116).  Therefore, nearly four years have passed since this lawsuit began.  Given that *Johnson* was decided in 1994, Alexander had an ample opportunity to determine that his First Amendment retaliation claim based on the System's lawsuit was precluded as a matter of law. *See Matter of Southmark Corp.*, 88 F.3d 311, 315–16 (5th Cir. 1996) (finding undue delay where facts needed to effectuate amendment were known to the moving party when the original complained was filed); *KaZee, Inc. v. Raimer*, No. 4:19-cv-31, 2020 WL 6382631, at \*3 (E.D. Tex. Oct. 30, 2020) (finding undue delay where party seeking leave to amend had been aware of issues presented in motion for leave for nearly one year).  The undue delay factor weighs against granting leave to amend.

Second, because the record contains no indication of bad faith or dilatory motive and the parties did not brief this issue, this factor weighs neutrally. *See Venzor v. Collin Cnty.*, No. 4:20-cv-318, 2021 WL 708611, at \*4 (E.D. Tex. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 694550 (E.D. Tex. Feb. 23, 2021).

Third, had Alexander sought leave to amend, it would have been his sixth attempt to amend his Counterclaim.  This factor weighs against granting leave to amend. *See Williams v. City of*

*Denton*, No. 4:17-cv-811, 2020 WL 1158610, at *4 (E.D. Tex. Mar. 10, 2020) (noting repeated

failures to cure deficiencies would weigh against granting leave to amend), *report and*

*recommendation adopted*, 2020 WL 1158610 (E.D. Tex. Mar. 10, 2020).

Fourth, given the lengthy pendency of this lawsuit, granting leave to amend would

prejudice the System, the Individual System Defendants, and the Law Firm Defendants.  To be

sure, discovery has not commenced, which supports the view that this case is in its procedural

infancy.  *See Venzor*, 2021 WL 708611, at *5; *Williams*, 2020 WL 1158610 at *6.  However, the

Court cannot ignore that this case has been pending for five years.  Nor can the Court ignore that

the parties have all engaged in extensive and vigorous motion practice.  Significant resources have

been expended to litigate this case. Further, permitting Alexander to plead an entirely new cause

of action—one that could have been discovered over the past five years—would unreasonably foist

additional, unanticipated costs on his adversaries.  *Cf. Hoffman v. L & M Arts*, No. 3:10-cv-953,

2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (finding, in the context of untimely expert

disclosures, prejudice results where "unreasonable additional costs that could have been avoided"

would result).  The prejudice factor weighs against granting Alexander leave to amend.

Fifth, and lastly, granting Alexander leave to assert a new cause of action would be futile.

Assuming a malicious prosecution claim is cognizable under the First Amendment, Alexander

must establish the elements of the state law tort of malicious prosecution.  *See Johnson*, 18 F.3d

320.   Under Texas law, the elements of malicious prosecution based on a civil proceeding

are: (1) the initiation or continuation of a civil proceeding against the plaintiff, (2) by or at the

insistence of the defendant, (3) malice in the commencement of the proceeding, (4) lack of

probable cause for the proceedings, (5) termination of the proceeding in the plaintiff's favor,

and (6) special damages.  *See Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

Here, the Court finds the probable cause element dispositive, and repleading to overcome this element would be futile.

In a civil proceeding, probable cause "requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Professional Real Est. Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62–63 (1993) (citations omitted) (cleaned up).  Here, no matter how Alexander pleads his claim, the System had a reasonable belief that there was a possibility the Settlement Agreement's no-contact clause prohibited Alexander from filing TPIA requests.

Overall, four factors weigh against granting leave to amend, and one weighs neutrally.  On balance, Alexander should not be granted leave to amend his Counterclaim.  Alexander's Objection (Dkt. #116) is **OVERRULED**.

## B.   SYSTEM AND INDIVIDUAL SYSTEM DEFENDANTS' OBJECTIONS

"[T]o avoid manifest injustice," the System and Individual System Defendants ask that the Court grant their Motion for Reconsideration (Dkt. #119 at p. 4).  In support, they raise two Objections: (1) the Report incorrectly concluded parties cannot waive TPIA rights through a contract and (2) the Settlement Agreement's plain language waived Alexander's right to contact the System with TPIA requests.

### 1.  Standard for Reconsideration

Because motions for reconsideration should only be granted in narrow circumstances, the movant must clearly establish either a manifest error of law or fact, or present newly discovered evidence.  *See Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004); *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).  "Reconsideration of an order is an extraordinary remedy which courts should use sparingly." *See In re Vioxx Prod. Liab. Litig.*, 230 F.R.D. 473, 474–75 (E.D. La. 2005).  "Accordingly, a motion for reconsideration 'is not the proper

vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Anderson v. Martco, LLC*, 852 F. App'x 858, 859 (5th Cir. 2021). District courts are afforded considerable discretion over whether to grant or deny a motion for reconsideration. *Edward H. Bohlin Co. v. Banning Co.*, 5 F.3d 350, 355 (5th Cir. 1993).

### 2.  The State Judge and Magistrate Judge's Decisions

The state judge concluded that Alexander could not contractually annul his right to request information from governmental entities in the State of Texas (Dkt. #34, Exhibit 1 at p. 4).  In so doing, the state judge cited the TPIA's expansive language, the Texas Legislature's directive that the TPIA be "liberally construed," and the Attorney General's Advisory Opinion (Dkt. #34, Exhibit 1 at 4–5).

On reconsideration, the Magistrate Judge found that the System and Individual System Defendants merely rehashed their arguments from the state court proceedings (Dkt. #115 at p. 11). Because these arguments were already considered and rejected by the state judge, the Magistrate Judge concluded the System and Individual System Defendants did not carry their burden to warrant justify reconsideration (Dkt. #115 at p. 11).

Nonetheless, the Magistrate Judge assessed the merits of the System and the Individual System Defendants' rehashed arguments (Dkt. #115 at p. 11).  Ultimately, the Magistrate Judge concluded that, under Texas law, the State of Texas cannot waive a private citizen's rights under the TPIA through a contractual agreement (Dkt. #115 at 11–12).  The Magistrate Judge relied on the same authorities as the state judge (Dkt. #115 at 11–12).[2]

---

[2] The Court takes judicial notice of the System's lawsuit against the Attorney General. *See Dallas Fire & Police Sys. v. Paxton*, No. D-1-GN-16-005167, Orig. Pet. (419th Dist. Ct., Travis Cnty. Oct. 12. 2016). In this parallel lawsuit, the System sought declaratory judgment that the System be excused from complying with the Advisory Opinion's order to disclose non-privileged documents to Kobel. *Id.* at 6. After the Magistrate Judge issued her Report on March 26, 2020, and after the parties filed Objections, responses, replies, sur-replies, and sur-sur-replies thereto, the System and the Attorney General settled their lawsuit on November 3, 2020. *See* No. D-1-GN-16-005167, Final Judgment (419th Dist. Ct., Travis, Cnty. Nov. 3, 2020). Notably, the Final Judgment orders the System to disclose all documents as ordered by the Advisory Opinion, with the exception of documents constituting "non-core attorney work product."

### 3.  The System and Individual System Defendants' Arguments

In their Objections to the Magistrate Judge's Report, the System and Individual System Defendants raise three arguments: (1) the strong public policy favoring freedom of contract should counsel a finding that TPIA rights are waivable; (2) the Advisory Opinion issued by the Attorney General only states that the System cannot waive away its TPIA obligations to the public, and it did not address whether the System could waive its TPIA obligations with respect to Alexander; and (3) because the TPIA does not expressly have an anti-waiver provision, the rights thereunder can be waived (Dkt. #119).

The first argument—that Texas has a strong public policy favoring freedom of contract— does not fairly portray the legal issue.  This case presents two competing interests, both of which are compelling: the strong public policy favoring freedom of contract *and* the fact that some rights are "too important" and therefore, cannot be waived.  *Moayedi v. Interstate 35/Chisam Road, LP*, 438 S.W.3d 1, 6 (Tex. 2014).  Without delving into the importance of Alexander's TPIA rights and explaining why these rights must make way for freedom of contract principles, this argument does not clearly establish a manifest error of law.

The System and the Individual System Defendants' second argument—that the Attorney General's Advisory Opinion only spoke in generalities, not with specificity towards Alexander— is plainly contradicted by the Opinion's text.  The Attorney General's Advisory Opinion clearly states that the TPIA's statutory language does not support System's argument.  *See* Advisory Opinion at *2.   The Advisory Opinion even states, "Consequently, unless the submitted

---

*Id.* at 2. The Final Judgment also explains that Kobel received notice of the settlement agreement, was afforded an opportunity to intervene as an interested party, but did not do so. *Id.* In light of this Final Judgment, there is a question of whether the Final Judgment precludes the System and Individual System Defendants from seeking reconsideration of the state judge's grant of summary judgment. It appears the System and Individual Defendants are obliged to comply with the Final Judgment and this lawsuit is not the appropriate vehicle to seek relief from disclosing Kobel's requested documents. However, because the parties were not afforded an opportunity to brief the issue, the Court will, at this time, not address it.

information comes within [a statutorily enumerated] exception to disclosure, it must be released, *notwithstanding any expectation or agreement to the contrary*." *Id.* (emphasis added).  The Attorney General spoke in unequivocal terms: after reviewing the underlying facts of this case, the Settlement Agreement, the TPIA's statutory language, and previous Advisory Opinions, the Attorney General concluded that Alexander's TPIA rights could not be contractually waived; hence, Alexander and Kobel's requests for information must be fulfilled unless an enumerated exception applies.  *See id.*

The System and the Individual System Defendants' third argument—that the TPIA does not contain an anti-waiver opinion—is their strongest.  In *Moayedi*, the Texas Supreme Court explained:

> In general, parties may waive statutory and even constitutional rights. Occasionally, the Legislature decides that some benefits are too important—and thus may not allow them—to be waived.  But, when it does decide to prohibit waiver, we ask that the Legislature speak clearly.  And indeed, other provisions in the Property Code do include anti-waiver language.  This anti-deficiency law, however, nowhere prohibits waiver.

438 S.W.3d at 6.  In their Objections, the System and the Individual System Defendants note that the TPIA contains no anti-waiver language, and therefore, Alexander's rights under the TPIA are waivable (Dkt. #119 at pp. 5–6).  Based on *Moayedi*, this argument has merit.  However, the System and the Individual System Defendants ask this Court to ignore the procedural posture of this argument.

The System already raised this exact issue before the state judge (Dkt. #34, Exhibit 2 at p. 12).  And yet, the state judge granted summary judgment in Alexander's favor and cited countervailing legal authority (Dkt. #34, Exhibit 1).  *See Leander Indep. Sch. Dist. v. Office of Att'y Gen.*, No. 03-18-243-CV, 2018 WL 6581523, at *2 (Tex. App.—Austin Dec. 14, 2018, no pet.) (holding that, because the TPIA must be liberally construed, close judgment calls are to be resolved in favor of disclosure).  Removing the lawsuit to federal court and seeking reconsideration

15

on a point of state law makes the Court wary.  As the Fifth Circuit has stated, a motion for reconsideration is not the proper vehicle for rehashing legal theories, and reconsideration should only be granted where the movant has clearly established a manifest error of law.  *See Templet*, 367 F.3d at 478; *Anderson*, 852 F. App'x at 859.  Here, legal authorities conflict with one another, and judicial officers can reasonably disagree as to whether a private citizen's TPIA rights can be waived through contract.  Due to the ambiguity in the law, the Court concludes that the state judge did not clearly make a manifest error of law.  Further, reconsideration is an extraordinary remedy that should be used sparingly.  *In re Vioxx*, 230 F.R.D. at 474–75.  Accordingly, the Court shall exercise its discretion and deny the Motion for Reconsideration.  The System and the Individual System Defendant's Objections (Dkt. #119) are therefore **OVERRULED**.

### 4.  The Plain Language of the Settlement Agreement

Because the Court will not disturb the state judge's finding that Alexander's TPIA rights cannot be contractually waived, the Court need not interpret the plain language of the Settlement Agreement.  Even if the Court concluded that the Settlement Agreement's no-contact provision encompasses TPIA requests, that meaning cannot overcome the state judge's finding that TPIA rights are non-waivable.

### IV.  CONCLUSION

Based on the foregoing, the Court finds Alexander, the System, and the Individual System Defendants' Objections (Dkts. #116, #119) are **OVERRULED**.

**IT IS ORDERED** that the System and Individual System Defendants' Motion to Reconsider the State Court's Order (Dkt. #34) is **DENIED**.  The state judge's grant of summary judgment on the System's breach of contract claim against Alexander shall stand.

**IT IS FURTHER ORDERED** that the Law Firm Defendants' Amended Rule 12(b)(6) Motion to Dismiss (Dkt. #26) is **GRANTED**.  Alexander's Fifth Amended

Counterclaim (Dkt. #20) against the Law Firm Defendants shall be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that the System's Second Amended Rule 12(c) Motion for Judgment on the Pleadings (Dkt. #54) is **GRANTED**. Judgment on the pleadings shall be **ENTERED** with respect to Alexander's Fifth Amended Counterclaim (Dkt. #20) against the System.

**IT IS FURTHER ORDERED** that the Individual System Defendants' Second Rule 12(b)(6) Motion to Dismiss and Anti-SLAPP Motion Pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code (Dkt. #53) is **GRANTED IN PART** and **DENIED IN PART** as follows: Alexander's Fifth Amended Counterclaim (Dkt. #20) against the Individual System Defendants should be dismissed for failure to state a claim. Alexander's Fifth Amended Counterclaim (Dkt. #20) against the Individual System Defendants should not be dismissed under Chapter 27 of the TCPA, as the TCPA does not apply in federal courts.

**IT IS SO ORDERED.**

 **SIGNED this 20th day of September, 2021.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

17